

FILED
OCT 2 2 2020
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**SHARIF ABDALLAH,**

    **Petitioner,**

v.                                                  **CRIMINAL NO. 4:15cr18-4**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner Sharif Abdallah's ("Petitioner") Motion for Compassionate Release. ECF No. 1009. For the reasons stated below, Petitioner's Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

Prior to January 2012, Petitioner and his father operated a gas station in Newport News, Virginia titled Red Barn. ECF No. 628. From January 2012 to September 2014, Red Barn purchased synthetic cannabinoids, commonly known as "spice," from various sources of supply. *Id.* In February, June, and September of 2014, law enforcement conducted three controlled purchases of spice from Red Barn. *Id.* On September 18, 2014, law enforcement executed a search warrant at Red Barn and recovered 18,311 grams of spice, $109,308 in U.S. currency, a firearm, and other items. *Id.* Even after getting caught, by December 2014 Petitioner purchased a second facility to conduct wholesale purchases for spice, providing retail to Hampton Roads area convenience stores. *Id.* On April 20, 2015, law enforcement executed another warrant at the second facility and recovered an unquantified amount of "crack" cocaine, 1,647.1 grams of spice, and firearms. *Id.*

On September 28, 2016, the government filed a Criminal Information against Petitioner, charging him with two statutory violations. ECF No. 437. Count 1 charged Petitioner with Conspiracy to Use a Communication Facility, in violation of 21 U.S.C. §§ 843(b) and 846. *Id.* Count 2 charged him with Unlawful Monetary Transactions, in violation of 18 U.S.C. § 1957. *Id.* On September 29, 2016, Petitioner waived indictment and pled guilty to both counts. ECF Nos. 450 and 451. On April 5, 2017, Petitioner was sentenced to a term of 48 months imprisonment for Count 1 and 84 months imprisonment for Count 2, all to be served consecutively. ECF No. 722. Petitioner also received 3 years of supervised release. *Id.* Petitioner was then ordered to forfeit several items of real and personal property pursuant to 21 U.S.C. § 853. ECF No. 896.

On August 28, 2020, Petitioner filed a motion for compassionate release based upon the ongoing threats COVID-19 imposes. ECF No. 1009. The Government responded in opposition on September 4, 2020. ECF No. 1011. Petitioner declined to reply to the Government's response. Accordingly, this matter is ripe for disposition.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Federal Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* Courts may; however, waive the exhaustion requirement under exigent circumstances. *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the

2

exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment upon a motion from the petitioner and after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" were previously described by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified in light of the petitioner's medical condition, age, or family circumstances. U.S.S.G. §1B1.13, n. 1 (A)–(C). Additionally, the Sentencing Commission further defined the limits under which a sentence reduction may be given under those justifications. *Id.* The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. §1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the Bureau of Prisons. As such, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he

3

Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive").

Additionally, and importantly, a petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Instead, the Court may consider a combination of factors, including — but not limited to — those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Issue

Petitioner alleges that he requested compassionate release from the warden at Brooklyn MDC on July 8, 2020. ECF No. 1009. Although Petitioner did not produce any evidence of this request, the government does not contest whether the request was submitted. ECF No. 1011 at 4 ("... it appears [Petitioner] has at least exhausted the first level of administrative remedy through the BOP."). If Petitioner did submit a request on July 8, 2020, Petitioner has met the 30-day requirement as Petitioner waited to file the present motion until August 28, 2020. At any rate, this Court has previously held that the exhaustion requirement within § 3582(c)(1)(A) may be waived in the midst of the COVID-19 pandemic. *See supra* Part II.A; *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020). Accordingly, the Court will waive the exhaustion requirement based upon the ongoing threats COVID-19 imposes.

#### B. Resolution of Petitioner's Request for Compassionate Release

1. *Consideration of the Factors Listed in 18 U.S.C. § 3553(a)*

In its consideration of the factors listed in 18 U.S.C. § 3553(a), the Court notes that Petitioner's offense conduct is much more serious than the title of his offense of conviction. ECF No. 628. Petitioner was caught red-handed with 18,311 grams of spice in the Red Barn. *Id.* Petitioner then cooperated with government seizure of the spice, $109,308, a firearm and other items from the premises. *Id.* Within months, Petitioner became a spice wholesaler, taking on a new role in the unlawful scheme to sell and distribute spice to the Hampton Roads community. *Id.* Petitioner is attributed with over 19,000 grams of spice, an unquantified amount of "crack" cocaine, and various firearms. *Id.* According to the CDC, spice abuse "is a global problem."[1] Adverse effects from the use of spice "range from temporary changes in mental status to death." *Id.* Undoubtedly, Petitioner's significant role in distributing spice in the Eastern District of Virginia significantly contributed to this "global problem."

Furthermore, Petitioner maintains a Criminal History Category of III and the statutory maximums for Petitioner's offenses were 48 months for Count 1 and 120 months for Count 2. ECF No. 628. To date, Petitioner has only served under 4 years of his 11-year total sentence. Based upon the foregoing, Petitioner's offense conduct strongly implicates the need for a sentence "to reflect the seriousness of the offense...and to provide just punishment." 18 U.S.C. § 3553(a)(2)(A)–(B). On the other hand, the Court also considers that Petitioner has no Bureau of Prisons disciplinary record. ECF No. 999. He has also participated in rehabilitative programming such as educational courses and drug abuse programs. ECF No. 1009-1. After full consideration of the § 3553(a) factors, however, the Court concludes that the purposes of Petitioner's sentence remain unfulfilled.

---

[1] *Synthetic Cannabinoids: An Overview for Healthcare Providers*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Sept. 11, 2020), https://www.cdc.gov/nceh/hsb/chemicals/sc/healthcare.html

*2. Evaluation of "Extraordinary and Compelling Reason"*

In evaluating whether an "extraordinary and compelling reason" for a sentence reduction has been established, the Court considers the severity of the ongoing COVID-19 outbreak in federal prisons. *See e.g. Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the BOP's ineffective efforts to curtail the spread of the virus within FCI Elkton). Specific to each petitioner, the Court examines the Centers for Disease Control's list of risk factors for severe COVID-19 complications when assessing compassionate release motions during the pandemic. *United States v. Lewellen*, 2020 WL 2615762, at *4 (N.D. Ill. May 22, 2020).

Here, Petitioner offers his alleged bronchitis, prior lung infections, and history of smoking as underlying conditions that may exacerbate a potential COVID-19 infection. ECF No. 1009. The Court notes that the CDC does list smoking and immunocompromising diseases as medical conditions that might cause an "increased risk of severe illness from COVID-19."[2] The Court, however, is unable to conclude that Petitioner is particularly vulnerable to COVID-19 based upon Petitioner's failure to produce sufficient medical records to support his claims. Upon a thorough review of Petitioner's medical records since incarceration, Petitioner was never diagnosed with bronchitis. Petitioner's presentence report further indicates that Petitioner "reports that his overall general health is good. He notes that he has no history of any serious illnesses and no allergies, and he is not currently taking any prescribed medications." ECF No. 628.

Regarding Petitioner's smoking history, Petitioner is 36 years old and he quit smoking at the time of his incarceration – over three years ago. While smoking is on CDC's list, it is on the

---

[2] *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

6

second tier of that list and thus less likely to lead to a potentially severe case of COVID-19 should Petitioner contract the disease. The Court further recognizes that since Petitioner's incarceration, Petitioner has made three visits to medical personnel for cold and flu-like symptoms. However, and contrary to Petitioner's motion, three visits in over three years does not suffice as evidence of any chronic lung condition. Accordingly, Petitioner has failed to produce enough information about his medical issues to show a heightened risk of severe illness or death. *See United States v. Dickson*, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) ("[petitioner] offers no proof, such as medical records that would substantiate [underlying health issues]"); *United States v. Clark*, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying motion for compassionate release because the petitioner failed to supply medical records to substantiate medical claims).

Based upon the foregoing reasoning, the Court is unable to find an extraordinary and compelling reason for relief after considering the unfulfilled purposes of Petitioner's original sentence.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**. The Clerk is **DIRECTED** to provide a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Newport News, Virginia
October ___, 2020

Raymond A. Jackson
United States District Judge

7